IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Melissa Scott,                                          :
                          Plaintiff          :        Civil Action 2:11-cv-00489

          v.                                      :        Judge Frost

Michael J. Astrue,                              :        Magistrate Judge Abel
Commissioner of Social Security,
                          Defendant          :

**REPORT AND RECOMMENDATION**

Plaintiff Melissa Scott brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability and Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff Melissa Scotts maintains she became disabled at age 45 by injuries sustained in a bus accident, headaches, new, low back and leg pain, diabetes, hypertension, depression, anxiety and post traumatic stress disorder. The administrative law judge found that Scott retained the ability to perform work having medium exertional demands that involves little or no contact with the public.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred at step two by failing to make a finding as

to whether Scott's back and neck pain was severe and/or whether her post-traumatic stress disorder was severe;

- The administrative law judge erred at step three in failing to assess whether Scott's physical impairments met or equaled the Listings of Impairments, or combined with her mental impairments to meet or equal the Listings;
- The administrative law judge erred in rejecting the opinion of Pamela Sayre-Butts, LISW, Scott's social worker counselor; and,
- The administrative law judge's controlling hypothetical question and his residual functional capacity finding did not adequately accommodate the limitations he found.

**Procedural History.**  Plaintiff Melissa Scott filed her application for disability insurance benefits on January 11, 2007, alleging that she became disabled on April 1, 2004, at age 45, by injuries sustained in a bus accident, headaches, back and leg pain and post traumatic stress disorder.  (R. 133, 185.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On November 9, 2009, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 24.)  A vocational expert also testified.  On April 5, 2010, the administrative law judge issued a decision finding that Scott was not disabled within the meaning of the Act.  (R. 15.)  On April 1, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Melissa Scott was born August 22, 1958. (R. 133.) She has a high school education and completed two years of college.  (R. 191.) She has worked as a behavioral health technician, cafeteria worker, cashier, community

organizer, home health aide, security officer and teacher's assistant.  She became unable to work April 1, 2004.  (R. 186-87.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Scott's testimony as follows:

> At the hearing, Ms. Scott testified about her involvement in a bus accident in 2004 in which she was injured. She is now limited in her neck movements and she has cervical pain that increases with stress and weather changes. She put her pain level on a bad day at "7" or "8" and she alleged she has more bad days than good. Ms. Scott attested that her neck and back pain prevented her from working. She also has tension headaches that have increased since her accident. There are three or four headaches a week and she needs to lie down when the occur.
>
> Her diabetes forces her to eat five small meals a day. If she misses a meal, she becomes dizzy and she becomes in danger of passing out. Her standing limit was given as 4 hours. She denied being able to carry things because of the back and neck pain that also restricts her sitting.
>
> Ms. Scott spoke of her depression that causes her to self-isolate and of her PTSD. Six months prior to her bus accident, she had been raped. Both events give her anxiety attacks and her depression impedes her concentration and retention of information.

(R. 12.)  At the November 2009 hearing before the administrative law judge, Scott testified that she had been working for the past year caring for her mother. She worked 26 hours a week and was paid $200 a week by a social services agency. (R. 44.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

3

**Physical Impairments.**

Wooster Community Hospital. On April 1, 2004, plaintiff was treated in the emergency department following a bus accident. The bus, in which she was a passenger, went off the road and rolled over. Plaintiff was pushed against the side wall of the bus and other passengers landed on top of her. Within 20 minutes of the accident, her left shoulder began to hurt. She was diagnosed with a sprain of the left shoulder and neck.  (R. 278-80.)

M.P. Patel, M.D. On May 7, 2004, Dr. Patel, evaluated plaintiff's injuries sustained in the bus accident. Scott reported persistent neck pain, which was described as sharp, burning, and extending into both arms. She had episodes of paresthesia. Looking up or down or turning sideways increased her pain. She reported recurring mid-low back pain. At times, the pain extended to both hips, buttocks, and posterior thighs. Pain was aggravated with bending or lifting. She had difficulty climbing or descending stairs.

On physical examination, plaintiff's cervical spine was tender in the midline over the spinous processes and in the adjacent paraspinous muscles from C3 to C7. There was muscular tightness in the paracervical region, most evident with neck hyperflexion. Flexion was restricted 30 degrees and extension 40 degrees. Right and left lateral flexion were 30 degrees. Right and left lateral rotation was 30 degrees. Deep tendon reflexes were 1+ in both upper extremities. Dr. Patel diagnosed a sprain/strain of the cervical and dorsal-lumbosacral spines.

4

On June 4, 2004, Dr. Patel re-evaluated plaintiff. Scott reported that she had fair relief from symptoms and that she did not take any medications. Her neck and upper back pain was localized over the based of the neck on both sides and the right upper paradorsal region. She had some difficulty turning her neck fully to the right side. Her low back pain was minimal. On examination, there was spasm and tenderness of the lower paracervical muscles bilaterally. There was tenderness over the right cervical-trapezius junction and right suprascapular region. Her right lateral flexion was 30 degrees. her right lateral rotation was 60 degrees. She had normal mobility of the lumbar spine, but there was pain and discomfort at the extreme range of motion.  (R. 289-91.)

On November 11, 2004, Dr. Patel examined plaintiff. Scott reported that she had recurring neck and back pain, at times extending into both shoulders, hips, and but-tocks. Examination of the thoracic spine revealed minimum tenderness and a normal range of mobility. There was spasm and tenderness of the lower paracervical and paralumbar muscles bilaterally. Her mobility was restricted and painful. Deep tendon reflexes in the upper and lower extremities were 1+ bilaterally. On November 18, 2004, Scott indicated that she had some relief with medications and Biofreeze. Dr. Patel indicated that his objective findings were consistent with some improvement in her condition with respect to the severity of spasm and tenderness and her improved mobility. (R. 292-93.)

<u>Jeffrey Dunnigan, D.C.</u>  On March 15, 2007, Dr. Dunnigan, a chiropractor,

completed a form concerning his treatment of plaintiff from April 16 through Sept-

ember 24, 2004. He reported that plaintiff experienced off and on pain and weakness.

She had pain on cervical flexion and rotation. (R. 310.)

Franklin D. Krause, M.D. On April 24, 2007, Dr. Krause examined Scott for the

Bureau of Disability Determination. He noted that plaintiff had occasional symptoms in

her neck and back without evidence of reflex asymmetry, atrophy, or abnormality in

gait or station. Plaintiff carried on all activities of daily living. She cooked, cleaned, and

shopped.  (R. 314-15.)

Jason Collins, M.D. On August 25, 2008, Dr. Collins began treating plaintiff.

Plaintiff was recently diagnosed with diabetes. (R. 425-26.)

Suman Sharma, M.D. Dr. Sharma provided treatment notes from December 15,

2008 through November 12, 2009. Plaintiff was treated for diabetes and hypertension.

(R. 467-76.) Plaintiff reported that she was having pain and fatigue. (R. 467.) On March,

2009, plaintiff reported that her pain was a 9 on a ten point scale, although she noted

that the pain came and went. (R. 468.) On April 24, 2009, plaintiff reported a burning

sensation in her feet. Dr. Sharma believed that it was likely early polyneuropathy as a

result of diabetes. (R. 470.)

**Psychological Impairments.**

David V. House, Ph.D. On May 1, 2007, Dr. House, a psychologist, evaluated

Scott for the Bureau of Disability Determination.  On mental status examination,

plaintiff reported 5-6 hours of broken sleep. Her appetite was inconsistent, but she ate a

lot if she was depressed.  She reported being depressed "off and on." She was hopeful about the future and cared about what happened. She denied any significant feelings of guilt. She reported episodic anxiety attacks. Following the bus accident, she was afraid to drive and she had flashbacks.

Scott was oriented in four spheres. Her concentration and attention were mildly to moderately limited. At times her thinking was somewhat fragmented and she was not focused, which contributed to a somewhat odd functioning. Dr. House concluded that plaintiff's concentration and attention were mildly to moderately limited primarily due to anxiety and obsessive compulsive behavior. Her ability to understand and follow directions was not limited, but she might have some difficulty, due to compulsivity, following directions beyond 4-5 steps. Her ability to withstand stress and pressure appeared moderately limited due to anxiety issues. Her ability to relate to others and deal with the general public was mildly limited due to anxiety issues. Her compulsivity gave her a rather odd quality in terms of her interactions. Her ability to adapt was moderately limited. Dr. House diagnosed obsessive compulsive disorder and dyssomnia. Her deferred diagnosing a mood disorder, not otherwise specified. Dr. House assigned her a Global Assessment of Functioning ("GAF") score of 60. (R. 341-45.)

Vicki Casterline, Ph.D. On May 31, 2007, Dr. Casterline completed a mental residual functional capacity assessment and a psychiatric review technique. Dr. Casterline opined that plaintiff Scott had moderate limitations in her ability to

7

understand and remember detailed instructions. With respect to sustained con-centration and persistence, plaintiff was moderately limited in her abilities to carry out very short and simple instructions, to maintain attention and concentration for extend-ed periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff had no significant limitations with respect to social interaction. Plaintiff was moderately limited in her abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. Dr. Casterline noted that plaintiff reported that she was independent in self-care, she drove, cooked, cleaned, worked out, and attended Kent State University. At the consultative examination, plaintiff was dressed appropriately and was neat and clean. There was no evidence of a thought disorder, but she had an odd presentation. Dr. Casterline concluded that plaintiff was able to perform simple repetitive tasks and more complex tasks of a similar nature. She could interact with others on a superficial level. She could live independently. Plaintiff would work best at tasks that were static in nature and had easily explained changes. She could work at a steady pace to sustain simple tasks. (R. 320-37.)

Coleman Professional Services. On August 23, 2007, Scott had an diagnostic assessment at Coleman Professional. Plaintiff reported anxiety, difficulty sleeping, and always feeling as if something bad was going to happen. She had low motivation and poor concentration. She was depressed, moody, and anxious. She had panic attacks and

felt overwhelmed. She was raped and sexually molested as a child.  Plaintiff was recommended to begin cognitive behavioral therapy sessions every two weeks. (R. 347-54.)

Joseph D. Perry, Ph.D. On December 27, 2007, Dr. Perry, a psychologist, performed a psychological evaluation at the request of the Bureau of Disability Determination. Plaintiff reported experiencing depression and anxiety. Her appetite and sleep was poor. Despite her reported anxiety, plaintiff appeared self-confident and outgoing. With respect to her activities of daily living, plaintiff reported that she went to bed at about 2-3:00 a.m. She had difficulty sleeping due to pain and anxiety. She was frequently fatigued during the day. She attended Kent State University from 9:00 a.m. to 4:00 p.m. Her other activities included housecleaning and studying. She reported that she had some friends and interacted with them. She took walks, watched movies and rode her bicycle. Dr. Perry diagnosed anxiety disorder, not otherwise specified. He assigned a GAF score of 80. He noted that she was able to function at a high level given that she attended school full-time and worked at her church on a part-time basis. (R. 386-90.)

Roseann Umana, Ph.D. On January 19, 2008, Dr. Umana completed a psychiatric review technique. Dr. Umana noted that in a December 2007 examination, Scott reported that she was seeking employment beyond her part-time position. Her ability to relate to others was unimpaired. Her abilities to understand and follow instructions and to perform tasks were unimpaired. Her ability to withstand stress and pressures was mildly limited. Dr. Umana opined that plaintiff's condition had improved rather than

9

worsened. She concluded that her condition was not severe. (R. 392-405.)

Lisa Stines, Ph.D. In a January 21, 2008 letter, Dr. Stines, a psychologist, reported that Scott had been involved in a study concerning treatment and post-traumatic stress disorder. Plaintiff's post-traumatic stress disorder was the result of a Greyhound bus accident. Plaintiff reported experiencing nightmares, recurrent thoughts about the trauma, loss of interest in activities, difficulty sleeping, and other symptoms of post-traumatic stress disorder. (R. 295.)

Scioto Paint Valley Mental Health Center. On February 3, 2009, Scott underwent a diagnostic assessment. The assessment was not signed. Soctt identified her current problem as severe anxiety. She reported that her short-term memory was impaired. She had poor sleep and a fair appetite. Her attitude was described as cooperative and motivated. Her mood was anxious and depressed. She was diagnosed with post-traumatic stress disorder and an anxiety disorder not otherwise specified. She was assigned a GAF score of 54.

A February 18, 2009 psychotherapy progress note indicated that plaintiff was applying for disability, which she viewed as temporary while she got back on her feet, finished school and found a job where she did not have to be around people as much. (R. 453.)

An November 5, 2009 medical statement completed by Pamela Sayre-Butt, L.I.S.W., indicated that plaintiff exhibited the following symptoms: anhedonia, sleep disturbance, decreased energy, difficulty concentrating or thinking, apprehensive

10

expectation, psychomotor agitation or retardation, autonomic hyperactivity, recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. Ms. Sayre-Butt also indicated that the need to rule out whether plaintiff was experiencing severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. Ms. Sayre-Butt opined that Scott had moderate restriction of daily activities and marked difficulty in maintaining social functioning. She exhibited deficiencies in concentration, persistence, or pace resulting in the frequent failure to complete tasks in a timely manner. She had repeated episodes of deterioration or decompensation. (R. 455-56.)

A September 29, 2009 treatment notes indicates that plaintiff was arrested and charged with driving under the influence of alcohol. (R. 460.)

**<u>Administrative Law Judge's Findings</u>.**

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Affective Mood Disorder, Anxiety Disorder, Malingering, hypertension, and diabetes (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift/carry 25 pounds frequently and 50 pounds occasionally. She can stand/walk or sit for 6 hours in an 8-hour workday. She cannot climb ropes, ladders, or scaffolds and she cannot be exposed tp unprotected heights or moving machinery. The claimant can have little or no contact with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 22, 1958 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination  of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.9699(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 10-15.)

   **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

12

of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred at step two by failing to make a finding as to whether Scott's back and neck pain was severe and/or whether her post-traumatic stress disorder was severe. Plaintiff argues that a determination that an impairment is not severe requires a careful evaluation of the medical findings and an informed judgment about its limiting effects in the individual's physical ability to perform basic work activities. Plaintiff

13

maintains that the administrative law judge's discussion concerning step two was non-existent and allows no insight into his finding. Because of the error at step two, the administrative law judge failed to consider whether plaintiffs back and neck pain and PTSD met or equaled the Listings, either singly or in combination with her other impairments. The administrative law judge is required to consider the impact of non-severe impairments at each subsequent step. Plaintiff maintains that the administrative law judge erred by completely ignoring or overlooking Scott's diagnoses of back and neck pain and PTSD at step two and every other step of the sequential process.

• <u>The administrative law judge erred at step three in failing to assess whether Scott's physical impairments met or equaled the Listings of Impairments, or combined with her mental impairments to meet or equal the Listings</u>. Plaintiff argues that the administrative law judge skipped an entire step of the necessary analysis and that this case must be remanded to correct the error.

• <u>The administrative law judge erred in rejecting the opinion of Pamela Sayre-Butt, LISW, Scott's social worker counselor</u>. Plaintiff argues that the administrative law judge erred when he stated that Ms. Sayre-Butt's opinion could not be granted significant weight because she was a non-medical professional. Plaintiff maintains that as a medical source, her opinion was entitled to even greater weight than that of a treating source if her opinion was provided better supporting evidence and a better explanation.

14

- <u>The administrative law judge's controlling hypothetical question and his residual functional capacity finding did not adequately accommodate the limitations he found</u>. Although the administrative law judge concluded that plaintiff had moderate limitations in the area of concentration, persistence or pace at step three, in formulating a residual functional capacity, plaintiff was only restricted to a simple, routine work environment. Plaintiff maintains that the residual functional capacity formulated by the administrative law judge fails to address her moderate limitations.

**Analysis.**  A sequential evaluation process is employed to determine whether an individual is disabled. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the

performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir.1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir.1981).

Here, the administrative law judge failed to make any finding at step two with respect to whether plaintiff's back and neck pain and post-traumatic stress disorder constituted a severe impairment. This failing does not constitute reversible error. In *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240 (6th Cir. 1987), the Sixth Circuit concluded that there was no reversible error when the Secretary failed to find that a claimant's cervical condition constituted a severe impairment when he continued with the remaining steps to determine the claimant's residual functional capacity. *Id.* at 244. *Fisk v. Astrue*, 253 Fed. Appx. 580, 583, 2007 WL 3325869, at *4 (6th Cir. 2007) ("[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'")(quoting *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir.1987)).

With respect to step three of the sequential evaluation, the administrative law judge failed to consider whether plaintiff's physical impairments singly or in combination with her other impairments met or equaled a Listing. The administrative

16

law judge found that plaintiff's hypertension and diabetes constituted severe

impairments. The decision, however, contains no discussion as to whether these

impairments met or equaled a listed impairment. Although plaintiff has failed to put

forth any argument that she met or equaled the relevant listings for diabetes or

hypertension, the administrative law judge erred by skipping a step of the analysis

required by the Commissioner's regulations. On remand, the administrative law judge

must actually evaluate the evidence, compare it to the Listings and provide a rationale

for his decision to allow for meaningful judicial review. *Reynolds v. Commissioner of

Social Security*, 424 Fed. Appx. 411, 416 (6th Cir. 2011).

    The administrative law judge rejected the opinion of Ms. Sayre-Butt on the basis

that she was not an acceptable medical source:

> The "marked" mental limitations the claimant received from the Scioto
> Paint Valley Medical Center can be given only little or no weight. The
> assessment is signed by a non-medical professional (Exhibit 21F, p. 3) and,
> under Social Security regulations, such a person cannot be granted
> significant opinion weight.

(R. 13). This statement reflects a misunderstanding of the regulations. Section 404.1513

of title 20 of the Code of Federal Regulations states:

> In addition to evidence from the acceptable medical sources listed in
> paragraph (a) of this section, we may also use evidence from other sources
> to show the severity of your impairment(s) and how it affects your ability
> to work. Other sources include, but are not limited to--
>
> (1) Medical sources not listed in paragraph (a) of this section (for example,
> nurse-practitioners, physicians' assistants, naturopaths, chiropractors,
> audiologists, and therapists). . . .

20 CFR § 404.1513(d)(1). Only "acceptable medical sources" can be considered a treating

source whose opinion may be entitled to controlling weight. SSR 06-03p; 20 C.F.R. §§

404.1527(d) & 416. 927(d). Evidence from other sources, however, may be used to

demonstrate the severity of an impairment or how it impacts that individual's ability to

function. Social Security Ruling 06-03p states:

> For opinions from sources such as teachers, counselors, and social workers
> who are not medical sources, and other non-medical professionals, it
> would be appropriate to consider such factors as the nature and extent of
> the relationship between the source and the individual, the source's
> qualifications, the source's area of specialty or expertise, the degree to
> which the source presents relevant evidence to support his or her opinion,
> whether the opinion is consistent with other evidence, and any other
> factors that tend to support or refute the opinion.
>
> An opinion from a "non-medical source" who has seen the claimant in his
> or her professional capacity may, under certain circumstances, properly be
> determined to outweigh the opinion from a medical source, including a
> treating source. For example, this could occur if the "non-medical source"
> has seen the individual more often and has greater knowledge of the
> individual's functioning over time and if the "non-medical source's"
> opinion has better supporting evidence and is more consistent with the
> evidence as a whole.

SSR 06-03p at *5-6. Here, the administrative law judge was under the mistaken belief

that Ms. Sayre-Butt's opinion could be given no weight because she was not an

acceptable medical source. As a result, he failed to evaluate her opinion and consider all

the evidence in the record.

In determining whether a claimant is disabled, an administrative law judge

makes a residual functional capacity determination.  That finding is an "assessment of

the claimant's remaining capacity for work" once his or her limitations have been taken

into account.  20 C.F.R. § 416.945.  It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].'  *Varley*, 820 F.2d at 779;  *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir.1975) (per curiam)."  *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002).

When a  vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities.  The facts in this hypothetical are the administrative law judge's residual functional capacity findings.  The administrative law judge must accurately state each limitation that affects the claimant's ability to work.  If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the  vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits.  *Howard*, 276 F.3d at 240-42.  If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge.  276 F.3d at 242.

Here, the administrative law judge concluded that plaintiff had moderate difficulties with regard to concentration, persistence or pace. In his hypothetical posed to the vocational expert, the administrative law judge asked him to consider an individual "mentally limited to a simple, routine work environment, having little or no contact with the public." (R. 47.) Plaintiff maintains that the hypothetical fails to

account for her moderate limitations in concentration, persistence or pace.

In *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010) cited a district court decision that held that a hypothetical limiting claimants to jobs entailing no more than simple routine, unskilled work is not adequate to convey a moderate limitation in ability to concentrate, persist and keep pace. *Id*. at 516-17 (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005). On remand, the administrative law judge's hypothetical to the vocational expert should reflect plaintiff's limitations in concentration, persistence, and pace.

From a review of the record as a whole, I conclude that this case should be REMANDED. On remand, the administrative law judge must evaluate the evidence with respect to plaintiff's physical impairments, compare it to the Listings and provide a rationale for his decision to allow for meaningful judicial review; evaluate Ms. Sayre-Butt's opinion in accordance with Social Security Ruling 06-03p; and present the vocational expert with a hypothetical that represents all of plaintiff's limitations.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


       s/Mark R.  Abel
       United States Magistrate Judge